IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYNE JEROME ROBERTSON,

    Plaintiff,

v.

SGT. W. STRUFFERT, et al.,

    Defendants.

No. C 12-04698 JSW

**AMENDED ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Plaintiff Wayne Jerome Robertson ("Plaintiff"). The Court finds this motion is suitable for disposition without oral argument, and therefore VACATES the hearing scheduled for June 19, 2015. *See* Civil L.R. 7-1(b). The Court has considered the parties' papers and relevant legal authority, and hereby denies Plaintiff's motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff is an inmate at Salinas Valley State Prison. On February 17, 2012, prison staff were notified by medical staff that Plaintiff was hoarding medications. (Compl., Ex. A at 18 (February 17, 2012 Crime Incident Report written by Lieutenant A. Pepiot).) Hoarding medications is considered dangerous because there have been instances of inmates attempting to commit suicide or harming themselves by ingesting hoarded medications. (*Id.*) On February 17, 2012, Licenced Vocational Nurse ("LVN") E. Scott asked Plaintiff to give her his high blood pressure medication and Plaintiff refused. (Compl. at 3.)[1] Correctional Officer R.E.

---

[1] The Court uses the page numbers of the complaint that appear on the Court's electronic docketing system.

1    Martinez received a request from LVN Scott to retrieve medications from Plaintiff's cell, as
2    ordered by the doctor.  (Compl., Ex. A at 22 (Officer Martinez's February 17, 2012 Rules
3    Violation Report ("Martinez RVR")).)  Officers Martinez and D. Nelson approached Plaintiff's
4    cell door and advised him that they were there to retrieve his medications as requested by the
5    doctor.  (*Id.*)  The Officers advised Plaintiff that medical staff would continue to provide him
6    with his medications.  (*Id.*)  Plaintiff refused to give them his medication.  (*Id.*; Compl. at 3.)
7    The Officers informed Plaintiff that he would be extracted if he refused to give up his
8    medication.  (Martinez RVR.)  Plaintiff continued to refuse and the Officers called Sgt.
9    Struffert.  (*Id.*)

10    Sgt. Struffert ordered Plaintiff to submit to handcuffs and vacate the cell for a cell
11    search.  ("Martinez RVR.)  Plaintiff ignored Sgt. Struffert's orders and began to cover his face
12    as if to prepare for a cell extraction.  (*Id.*)  Sgt. Struffert gave commands to Plaintiff to stop
13    covering or oleoresin capsicum ("OC") would be used.  (*Id.*)  Plaintiff continued to cover his
14    face and Sgt. Struffert sprayed a burst of OC toward Plaintiff's face at a distance of
15    approximately ten feet.  (*Id.*)  Plaintiff continued to disregard Sgt. Struffert's orders.  (*Id.*)  Sgt.
16    Struffert then "utilized four (4) T-16 OC grenades, nine more bursts from an MK-9 and two OC
17    Vapor grenades to gain compliance."  (*Id.*)  Plaintiff then complied and submitted to handcuffs.
18    (*Id.*)  He was taken out of his cell and brought to an outside shower to be decontaminated from
19    the effects of OC.  (*Id.*)

20    According to Sgt. Struffert's Crime Incident Report, she told Plaintiff "if he refused to
21    cuff and exit his cell, an extraction team would be assembled and chemical agents would be
22    used to remove him from his cell."  (Compl. Ex. A at 20 (Sgt. Struffert's February 17, 2012
23    Crime Incident Report).)  However, Plaintiff stated, "You'll have to come get me."  (*Id.*)
24    Plaintiff went to the back of the cell and began to "barricade."  (*Id.*)  He grabbed a towel and
25    started to put it over his head.  (*Id.*)  Sgt. Struffert gave Plaintiff a direct order "not to barricade
26    or she would spray him with chemical agents."  (*Id.*)  After Plaintiff ignored her orders, Sgt.
27    Struffert opened the cuff-port and sprayed Plaintiff with her MK-9 OC.  (*Id.*)  Plaintiff was at
28    the back of the cell approximately ten feet away and the spray hit him in the head and shoulder

2

1 area. (*Id.*) Sgt. Struffert again ordered Plaintiff to cuff-up, but he remained at the back of the
2 cell, in a kneeling position. (*Id.*) Sgt. Struffert sprayed Plaintiff a second time and continued to
3 order him to cuff up. (*Id.*) She sprayed him two additional times of two to three second bursts
4 and waited approximately fifteen to thirty seconds between each application. (*Id.*) Sgt.
5 Struffert ordered Plaintiff to come over and cuff up or she would continue to use chemical
6 agents, but Plaintiff continued to ignore her orders, keeping the towel over his head to block the
7 effects of the OC. (*Id.* at 20-21.) Sgt. Struffert then deployed an OC grenade into the cell. (*Id.*)
8 Plaintiff stayed at the back of the cell and continued to cover his head and ignore Sgt. Struffert's
9 orders. (*Id.* at 21.) She then administered another burst of OC, again with negative results from
10 Plaintiff. (*Id.*) She deployed a second OC grenade. (*Id.*)

11 Plaintiff then got up, put his face in the sink and spit and wetted down the towel. (*Id.*)
12 Sgt. Struffert again ordered Plaintiff to come to the cuff port and cuff-up, but he put the towel
13 back on his head and retreated to the back of the cell. (*Id.*) Sgt. Struffert opened the cuff port
14 and sprayed Plaintiff again with OC. (*Id.*) As Plaintiff turned to put his back against the wall
15 and kneel down, Sgt. Struffert deployed a third grenade. (*Id.*) Plaintiff continued to ignore Sgt.
16 Struffert's orders, so she sprayed Plaintiff two additional times with OC. (*Id.*) Plaintiff
17 maintained his position at the back of the cell with the wet towel over his head. (*Id.*) Sgt.
18 Struffert deployed a fourth grenade which disbursed near Plaintiff. (*Id.*) Plaintiff pulled the
19 blanket and sheets from his bunk attempting to cover himself up. (*Id.*) Sgt. Struffert opened the
20 cuff port and sprayed Plaintiff again with OC. (*Id.*) Sgt. Struffert asked Officer Martinez to
21 retrieve additional chemical agents. (*Id.*) Then Sgt. Struffert deployed an OC vapor grenade on
22 the top of the desk where it disbursed two feet away from Plaintiff. (*Id.*) Plaintiff pulled the
23 blankets over his face even tighter. (*Id.*) Sgt. Struffert then deployed a second OC vapor
24 grenade at Plaintiff's feet where it dispersed. (*Id.*)

25 Plaintiff then got up and came to the cuff port and followed Sgt. Struffert's orders to
26 turn on the light and take off his clothes. (*Id.*) Officer Nelson conducted an unclothed body
27 search and then handcuffed Plaintiff. (*Id.*) Plaintiff was then escorted to the shower yard for
28 decontamination. (*Id.*) Plaintiff was placed in a holding cell until his own cell was

3

decontaminated. (*Id.*) Officer Cervantes found medication in Plaintiff's cell and took it to the pharmacist for identification. (*Id.*) The medication consisted of 133 tablets of Enalapril, 197 tablets of hydrochlorothiazide, 210 tablets of aspirin, and 19 tablets of Verapamil. (Compl., Ex. A at 15.)

Struffert stated at her deposition that she had been told by the officers on February 17, 2012 that Plaintiff had been in "the psych prior." (Declaration of Michael J. Quinn ("Quinn Decl."), Ex. 1 (Deposition of Sgt. Struffert) at 79:17-25.) She further stated that she sprayed OC into the cuff port because she could not see clearly into the cell and could not see exactly what Plaintiff was doing. She feared that if he had the medication, he was consuming them. (*Id*. at 86:10-16.) In response to a question asking whether there was anything to suggest that on that particular day Plaintiff might have a plan to ingest medication, Sgt. Struffert testified "I had no knowledge of that." (*Id*. at 91:7-15.) But she clarified that her concern was "elevated" because LVN Scott expressed concern to her. (*Id*. at 91:17-92:3; *see also* 136:6-13.)

The Court shall address additional facts as necessary in the remainder of this Order. Plaintiff now moves for partial summary judgment on the grounds that Sgt. Struffert violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

**DISCUSSION**

**A.      Legal Standard Applicable to Motions for Summary Judgment.**

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A fact is "material" if it may affect the outcome of the case. *Id.* at 248. The party moving for summary judgment bears the initial responsibility of identifying those portions of the record which demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

Once the moving party meets this initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex,* 477 U.S. at 323; *see also Keenan*, 91 F.3d at 1279.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id.* at 630-31.

**B.     Plaintiff's Motion.**

Plaintiff claims that Sgt. Struffert used excessive and unnecessary force upon him on February 17, 2012, in violation of his rights under the Eighth Amendment. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9 (1992)) (internal quotations omitted). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson,* 503 U.S. at 7.

5

"Unreasonable force claims are generally questions of fact for a jury." *Hervey v. Estes*, 65 F3d 784, 791 (9th Cir. 1995). The Court previously determined, viewing the evidence in the light most favorable to Plaintiff, that there was a question of fact as to the need for the application of force and the amount of force that Sgt. Struffert applied. The question before the Court now is whether there is a question of fact when the evidence is viewed in the light most favorable to Sgt. Struffert.

There is substantial evidence upon which a fact-finder could reasonably find that the amount of OC that Sgt. Stuffert used against Plaintiff was unnecessary and excessive under the circumstances. As the Court previously noted, the undisputed evidence shows that Sgt. Struffert deployed, in a very short time span, four TC-16 OC expulsion grenades, two OC Vapor aerosol grenades and ten bursts from MK-9 OC containers into Plaintiff's cell. And although there is evidence in the record that, in general, an inmate hoarding medication may pose a dangerous situation because he could harm himself with them, in this specific circumstance, it appears that Plaintiff had been collecting pills for a long time without the occurrence of any dangerous incident. LVN Scott told Sgt. Stuffert that Plaintiff was not taking his blood pressure medication correctly and that he needed to come out of the cell for a blood pressure check. She also told Sgt. Struffert that Plaintiff had been ordered to turn over his medication and that he refused. (Declaration of Lori Rifkin, Ex. 1 (Deposition of Sgt. Struffert) at 80:10-82:19.) Defendant Struffert understood that "the concern was that [Plaintiff] wasn't taking [the medication] properly as prescribed." (*Id.*, Ex. 1 at 81:4-5.) LVN Scott did not tell Sgt. Struffert that Plaintiff had made past suicide attempts. In fact, Sgt. Struffert testified that she did not have any knowledge that there was anything to suggest that Plaintiff might have a plan to ingest the medication on that day. (*Id.*, Ex. 1 at 88:22-25, 91:12-15.)

It was dark, but Sgt. Struffert did not see any medication visible in Plaintiff's cell. (*Id.*, Ex. 1 at 85:7-16.) Sgt. Struffert could see that Plaintiff was using both of his hands to wrap or hold the towel and blanket around his head. (*Id.*, Ex. 1 at 86:23-87:21.) There is also evidence that Sgt. Struffert used OC against Plaintiff because he was not following the order to exit his cell. Sgt. Struffert testified that the reason she started spraying Plaintiff with OC was

6

1  because he was barricading himself by holding a towel up to his face and refusing to come out
2  of his cell as ordered. (*Id.*, Ex. 1 at 113:21-23, 124:8-20; *see also* Ex. 2 at AGO 001, 004-005.)
3  In a supplemental crime incident report, Sgt. Struffert stated that she continued to use
4  immediate force because she feared that if given the opportunity, Plaintiff would ingest the
5  medication. (*Id.*, Ex. 2 at AGO 007.)

6        In Defendants' motion for summary judgment, Sgt. Struffert did not even argue that an
7  immediate use of force was justified. Sgt. Struffert initially argued that a "controlled use of
8  force" was warranted against Plaintiff and that she sprayed OC into Plaintiff's cell "[i]n an
9  effort to gain Plaintiff's compliance" with her orders and in "a good faith effort to restore
10 discipline." (*See* Docket No. 39.)

11       Nevertheless, although the evidence in support of Sgt. Struffert's position is thin, the
12 Court cannot find as a matter of law that Sgt. Struffert was acting maliciously and sadistically
13 for the very purpose of causing harm. Notably, the Court cannot make credibility
14 determinations and must view the evidence in the light most favorable to Sgt. Struffert, as the
15 non-moving party. While a jury may not ultimately find Sgt. Struffert's testimony to be
16 credible, she testified at her deposition that she used immediate force because she was
17 concerned that Plaintiff may have been ingesting the medication that he was hoarding in his
18 cell. Just before the incident, LVN Scott had expressed some concern about Plaintiff's hoarding
19 of the medication and refusing to turn the medication over. Plaintiff's cell was dark and Sgt.
20 Struffert could not see clearly into the cell and could not see exactly what Plaintiff was doing.
21 She feared that if he had the medication, he was consuming them. (Quinn Decl., Ex. 1. at
22 86:10-16, 91:17-92:3, 136:6-13.) Based on the current record and procedural posture, Sgt.
23 Struffert's testimony, viewed in the light most favorable to Sgt. Struffert, is sufficient to create a
24 material dispute of fact which precludes granting summary judgment in Plaintiff's favor.
25 Accordingly, the Court denies Plaintiff's motion for partial summary judgment.

## CONCLUSION

27       For the foregoing reasons, the Court DENIES Plaintiff's motion for partial summary
28 judgment. Pursuant to Civil Local Rule 72-1 and ADR Local Rule 7-2 this matter is referred to

7

Magistrate Judge Vadas to conduct a further settlement conference. The settlement conference shall be conducted by within 90 days from the date of this order, if possible. The Court HEREBY CONTINUES the pretrial conference to December 7, 2015 at 2:00 p.m., jury selection to January 6, 20116 at 8:00 a.m., and trial to January 11, 2016 at 8:00 a.m.

**IT IS SO ORDERED.**

Dated: June 15, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE